RECORD NO. 13-1227

In The

# United States Court of Appeals
### For The Fourth Circuit

## CHRISTOPHER J. COVEY; LELA G. COVEY,

*Plaintiffs – Appellants*,

**v.**

## ASSESSOR OF OHIO COUNTY; KATHIE HOFFMAN, Head Assessor; ROY CREWS, Field Deputy; UNKNOWN ASSESSOR; OHIO COUNTY SHERIFF; PATRICK BUTLER, Sheriff; ALEX ESPEJO, Corporal; RON WHITE, Deputy; NELSON CROFT, Lieutenant; NICHOLE SEIFERT, Officer; HNK, Unknown Officer; DLG, Unknown Officer; DEPARTMENT OF JUSTICE - DEA; OHIO VALLEY DRUG TASK FORCE; OHIO COUNTY ANIMAL SHELTER; DOUG MCCROSKY, Supervisor; UNKNOWN DOG WARDENS (2); UNITED STATES OF AMERICA; ROBERT L. MANCHAS, S.A.,

*Defendants – Appellees*.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA AT WHEELING

———————

## SUPPLEMENTAL BRIEF OF APPELLANTS

———————

Sean E. Andrussier                          On the Brief:
DUKE UNIVERSITY SCHOOL OF LAW                   Shifali Baliga
Box 90360, 210 Science Drive                    Nicholas S. Brod
Durham, North Carolina  27708                   Erika M. Hyde
(919) 613-7280

*Counsel for Appellants*                     *Students, Duke University
                                             School of Law*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No.  13-1227          Caption:   Christopher Covey and Lela Covey v. Assessor of Ohio County, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

 Christopher Covey and Lela Covey
(name of party/amicus)

 who is _____Appellants_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                    ☐YES ☑NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                    ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Sean Andrussier          Date: 1/13/2014

Counsel for: Appellants

# CERTIFICATE OF SERVICE
**************************

I certify that on _____1/13/14_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Sean Andrussier                         1/13/2014
(signature)                                    (date)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................... ii

DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY ................ 1

    A.    Espejo And Manchas Are Not Entitled To Qualified Immunity ......... 3

        1.    The exigent circumstances exception ......................................... 3

        2.    The implied license known as the knock-and-talk exception ...................................................................................... 6

    B.    The Tax Assessor Is Not Entitled To Qualified Immunity ................. 11

CONCLUSION ........................................................................................... 22

WORD COUNT AND CERTIFICATE OF COMPLIANCE
WITH TYPEFACE REQUIREMENT

CERTIFICATE OF FILING AND SERVICE

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alvarez v. Montgomery Cnty.*,
 147 F.3d 354 (4th Cir. 1998) ..............................................................8, 9, 10

*Anderson v. Creighton*,
 483 U.S. 635 (1987).......................................................................................2

*Arizona v. Hicks*,
 480 U.S. 321 (1987).............................................................................16, 17

*Bond v. United States*,
 529 U.S. 334 (2000).................................................................................15

*California v. Ciraolo*,
 476 U.S. 207 (1986).................................................................................13

*Camara v. Mun. Court of City & Cnty. of San Francisco*,
 387 U.S. 523 (1967)...................................................................... 12-13, 14

*City of Ontario v. Quon*,
 130 S. Ct. 2619 (2010).............................................................................12

*Dalcour v. City of Lakewood*,
 492 F. App'x 924 (10th Cir. 2012)..............................................................21

*Durham v. Jones*,
 737 F.3d 291 (4th Cir. 2013) .........................................................................1

*Edens v. Kennedy*,
 112 F. App'x 870 (4th Cir. 2004)...................................................................8

*Florida v. Jardines*,
 133 S. Ct. 1409 (2013)..................................................................................7

*Groh v. Ramirez,*
    540 U.S. 551 (2004)............................................................................ 2-3

*Henry v. Purnell,*
    501 F.3d 374 (4th Cir. 2007) ...........................................................2

*Hope v. Pelzer,*
    536 U.S. 730 (2002)...........................................................................2

*Horton v. California,*
    496 U.S. 128 (1990)...........................................................................3

*Illinois v. Gates,*
    462 U.S. 213 (1983)...........................................................................4

*In re Allen,*
    106 F.3d 582 (4th Cir. 1997) .........................................................15

*In re Shonk Land Co.,*
    204 S.E.2d 68 (W. Va. 1974) .........................................................15

*Katz v. United States,*
    389 U.S. 347 (1967).........................................................................20

*Kentucky v. King,*
    131 S. Ct. 1849 (2011)...................................................................4, 5

*Kyllo v. United States,*
    533 U.S. 27 (2001)...........................................................................21

*Michigan v. Tyler,*
    436 U.S. 499 (1978).........................................................................12

*New Jersey v. T.L.O.,*
    469 U.S. 325 (1985).........................................................................12

*Oliver v. United States,*
    466 U.S. 170 (1984).....................................................................3, 15

*Ornelas v. United States*,
    517 U.S. 690 (1996)..........................................................................................4

*Payton v. New York*,
    445 U.S. 573 (1980)........................................................................................20

*Pinder v. Johnson*,
    54 F.3d 1169 (4th Cir. 1995) ...........................................................................2

*Pritchett v. Alford*,
    973 F.2d 307 (4th Cir. 1992) ...........................................................................2

*Rogers v. Pendleton*,
    249 F.3d 279 (4th Cir. 2001) .......................................................................3, 6

*Silverman v. United States*,
    365 U.S. 505 (1961)........................................................................................20

*United States v. Anderson*,
    552 F.2d 1296 (8th Cir. 1977) .......................................................................10

*United States v. Bradshaw*,
    490 F.2d 1097 (4th Cir. 1974) ......................................................8, 9, 18, 19

*United States v. Cephas*,
    254 F.3d 488 (4th Cir. 2001) .......................................................................4, 5

*United States v. Daoust*,
    916 F.2d 757 (1st Cir. 1990)..........................................................................10

*United States v. Garcia*,
    997 F.2d 1273 (9th Cir. 1993) .......................................................................10

*United States v. Karo*,
    468 U.S. 705 (1984)........................................................................................21

*United States v. Lalor*,
    996 F.2d 1578 (4th Cir. 1993) .........................................................................5

*United States v. McGraw*,
　　920 F.2d 224 (4th Cir. 1990) ...........................................................5

*United States v. Moss*,
　　963 F.2d 673 (4th Cir. 1992) ...................................................17, 18

*United States v. Mowatt*,
　　513 F.3d 395 (4th Cir. 2008) ...........................................................4

*United States v. Santa*,
　　236 F.3d 662 (11th Cir. 2000) .........................................................5

*United States v. Turner*,
　　650 F.2d 526 (4th Cir. 1981) ...........................................................4

*United States v. Van Dyke*,
　　643 F.2d 992 (4th Cir. 1981) ...................................................3, 15

*United States v. Winsor*,
　　846 F.2d 1569 (9th Cir. 1988) .......................................................21

*Wall v. Wade*,
　　741 F.3d 492 (4th Cir. 2014) ...........................................................1

*Welsh v. Wisconsin*,
　　466 U.S. 740 (1984).........................................................................3

*Wilson v. Kittoe*,
　　337 F.3d 392 (4th Cir. 2003) ...........................................................2

## CONSTITUTIONAL PROVISION

U.S. CONST. amend. IV .............................................................*passim*

**STATUTES**

W.V. Code § 189-2-3.3 .................................................................................... 13

W.V. Code § 189-2-3.4 .................................................................................... 13

W.V. Code § 189-2-3.5 .................................................................................... 13

The Court issued an order directing Appellants to file a supplemental brief to address the defense of qualified immunity, a defense not addressed by the district court.  Accordingly, Appellants submit this supplemental brief.[1]

## DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

"Qualified immunity protects government officials performing discretionary functions unless: (1) the allegations underlying the claim, if true, substantiate the violation of a federal statutory or constitutional right; and (2) this violation was of a clearly established right of which a reasonable person would have known."  *Wall v. Wade*, 741 F.3d 492, 498 (4th Cir. 2014) (internal quotation marks omitted).  "The burden of proof and persuasion with respect to a defense of qualified immunity rests on the official asserting that defense."  *Durham v. Jones*, 737 F.3d 291, 299 (4th Cir. 2013) (internal quotation marks and citation omitted).

The first prong of the two-part inquiry is addressed in our opening brief: The Coveys have sufficiently alleged a violation of a constitutional right.  Thus, qualified immunity is unavailable unless Defendants can show that the right was

---

[1] As this appeal has matured, the Coveys have limited their federal claims to challenge the conduct that occurred before the search warrant issued, and thus before officers searched inside their home (the officers' search inside the home occurred only after the warrant issued).  As noted in the opening brief, the Coveys had a claim that the search warrant authorizing the search of their home was not sufficiently particularized because they had never seen the exhibit to the warrant that referenced the items to be searched.  But Defendants produced that search warrant exhibit and filed it in this Court during informal briefing.  The Coveys are no longer pursuing a claim based on the scope of the warrant.

not clearly established at the time of the conduct in October 2009 so that a reasonable person could have believed that his actions were lawful.  *See Henry v. Purnell*, 501 F.3d 374, 378 (4th Cir. 2007) (discussing burden of proof).

Although the right must be framed at an appropriate level of particularity based on the specific context of the case so that the violation is "apparent," *Anderson v. Creighton*, 483 U.S. 635, 640 (1987), "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful," *id.*  Because "'qualified immunity was never intended to relieve government officials from the responsibility of applying familiar legal principles to new situations,'" *Wilson v. Kittoe*, 337 F.3d 392, 403 (4th Cir. 2003) (citations omitted), "officials can still be on notice that their conduct violates established law even in novel factual circumstances," *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *accord Pinder v. Johnson*, 54 F.3d 1169, 1173 (4th Cir. 1995) (en banc) (noting that "there need not be a prior case directly on all fours"); *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992).

Below we first address qualified immunity as to the officers, Defendants Espejo and Manchas.  We then address the tax assessor.  But we first note two fundamental points:  First, "[n]o reasonable officer could claim to be unaware of the basic rule, well established by our cases, that, absent consent or exigency, a warrantless search of the home is presumptively unconstitutional."  *Groh v.*

*Ramirez*, 540 U.S. 551, 564 (2004).  Second, it has long been clearly established that the home's curtilage constitutes "part of [the] home itself for Fourth Amendment purposes."  *Oliver v. United States*, 466 U.S. 170, 180 (1984); *see Rogers v. Pendleton*, 249 F.3d 279, 287 (4th Cir. 2001) (recognizing as clearly established for purposes of qualified-immunity analysis that "the curtilage is entitled to the same level of Fourth Amendment protection extended to the home").

### A.    Espejo And Manchas Are Not Entitled To Qualified Immunity.

#### 1.  The exigent circumstances exception

The right to be free from warrantless searches of the home, absent probable cause coupled with exigent circumstances, has long been clearly established.  *See Horton v. California*, 496 U.S. 128, 137 n.7 (1990) ("[N]o amount of probable cause can justify a warrantless search or seizure absent [such] exigent circumstances.") (internal quotation marks and citations omitted); *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984).  That this right extended to the home's curtilage was also clearly established.  *Rogers*, 249 F.3d at 290 ("Rogers had a clearly established right to be free of the officers' planned search of the curtilage of his home, absent probable cause plus either a warrant or exigent circumstances."); *United States v. Van Dyke*, 643 F.2d 992, 993 (4th Cir. 1981) ("[A]bsent exigent circumstances a warrantless search of one's home or its curtilage, when effected through trespass, violates the fourth amendment[.]").

3

Exigent circumstances include the "hot pursuit of a fleeing suspect," the need to provide "emergency aid," and "the need to prevent the imminent destruction of evidence." *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011) (internal quotation marks and citation omitted). In determining if officers had a compelling need to act, courts evaluate the circumstances, including:

> (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the officers' reasonable belief that the contraband is about to be removed or destroyed; (3) the possibility of danger to police guarding the site; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband.

*United States v. Cephas*, 254 F.3d 488, 495 (4th Cir. 2001) (quoting *United States v. Turner*, 650 F.2d 526, 528 (4th Cir. 1981)).

Here, Defendants did not argue below that they had probable cause before they entered the curtilage—i.e., based solely on the tax assessor's report that he "observed what [he] believed to be marijuana" in the back patio area while nobody was home. *See* J.A. 33 (criminal complaint).[2] Nor did Defendants rely below on the exigency exception. Regardless, they did not confront an exigency at the time they decided to enter the curtilage. *See United States v. Mowatt*, 513 F.3d 395, 399 (4th Cir. 2008) ("It is well established that, even when officers have probable cause

---

[2] Probable cause "exist[s] where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found" in a particular place. *Ornelas v. United States*, 517 U.S. 690, 696 (1996). Among the circumstances is the "'basis of knowledge' of persons supplying hearsay information." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

to believe that contraband is present in a home, a warrantless search of the home is unlawful unless exigent circumstances exist *at the time of entry*.") (emphasis added), *abrogated on other grounds by King*, 131 S. Ct. at 1859.

When they began their entry into the curtilage, the officers had no reasonable basis to believe that the destruction of evidence was imminent. "There is no support for the proposition that each and every narcotics search carries a risk that evidence will be destroyed." *United States v. Lalor*, 996 F.2d 1578, 1584 (4th Cir. 1993). And "[i]t is well settled that circumstances are not normally considered exigent where the suspects are unaware of police surveillance." *United States v. Santa*, 236 F.3d 662, 669–70 (11th Cir. 2000) (internal quotation marks and brackets omitted); *see Cephas*, 254 F.3d at 495 (identifying one factor as whether officers have "information indicating the possessors of the contraband are aware that police are on their trail"); *United States v. McGraw*, 920 F.2d 224, 230 (4th Cir. 1990) (holding that officers lacked exigent circumstances where, *inter alia*, the suspect "did not know. . . of the officers' presence"). Here, the record does not support a finding that the officers had a reasonable belief that Mr. Covey was aware that the police were on his trail before the officers entered the curtilage.

To the contrary, the complaint alleges that Mr. Covey was "surprised" to turn around in the patio area and see two men standing there (even then, Mr. Covey did not immediately realize they were officers because they were dressed in plain

clothes and failed to identify themselves before seizing him).  J.A. 13 (¶¶ 12–13).

Moreover, a fair inference arises that if Mr. Covey had seen strangers in his

driveway, he would have gone to the driveway, rather than allowing them to

descend to the patio area where he had marijuana.  Mr. Covey has maintained that

he must have been in his house when the officers, unbeknownst to him, drove up

the driveway.  Opening Br. 31–32 (citing objection to magistrate judge's report).

And though Mr. Covey obviously stepped outside to his workbench at some point

before the officers surprised him there, photographs of the property indicate that,

from where the officers parked their car, an intervening stone wall would have

blocked the line of vision between their car and the workbench.  Opening Br. 32.

And so, a reasonable officer could not have believed that a combination of

probable cause and exigency justified a warrantless entry into the curtilage.

### 2.  The implied license known as the knock-and-talk exception

As the opening brief discusses at length, what is sometimes called the

"knock-and-talk" exception is really an implicit license based on custom—a

customary invitation that extends to the public at large, including peddlers,

pollsters, and police officers.  Opening Br. 21–25.  It was clearly established that

this is a "limited license to do what any citizen may do."  *Rogers*, 249 F.3d at 294.

As the Supreme Court has said, "Complying with the terms of that traditional

invitation does not require fine-grained legal knowledge; it is generally managed

without incident by the Nation's Girl Scouts and trick-or-treaters." *Florida v. Jardines*, 133 S. Ct. 1409, 1415 (2013).[3]

The question is whether a reasonable person—including an uninvited visitor—would have understood this limited license as authorizing him to ignore an accessible front door and breach the curtilage behind a secluded rural home without homeowner consent, whenever the circumstances indicate that the visitor might find a homeowner there.[4]  If so, the question then becomes whether, under the circumstances of this case, these officers reasonably believed they might find Mr. Covey behind his home before they breached the curtilage.

As noted, the implied license permits a visitor to approach a home's front door by the path to that door and to knock; by custom, front walkways and front porches by front doors are, absent unusual circumstances, impliedly open to public access.  *Jardines*, 133 S. Ct. at 1415 ("This implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave."); *id.* at 1421–22 (Alito, J., dissenting) ("It is said that members of the public may lawfully proceed along a walkway leading to the front door of a house because custom grants them a

---

[3] Although *Jardines* was decided after the conduct at issue in this case, the Court was commenting on a longstanding customary license.  *See* 133 S. Ct. at 1415.

[4] That Defendants did not approach the front door is a reasonable inference arising from the allegation about where and how they parked, and from other information not in the record that can be established if the claim proceeds.

7

license to do so.").  Indeed, this Court has said that the "the front entranceway to a residential dwelling" is an area "where a person lacks a reasonable expectation of privacy." *Alvarez v. Montgomery Cnty.*, 147 F.3d 354, 357 (4th Cir. 1998).

As for the curtilage behind a home, this Court has said that, under appropriate circumstances, an officer may proceed there. *Id.* at 358 (holding that a "reasonableness approach" governs); *Edens v. Kennedy*, 112 F. App'x 870, 874 (4th Cir. 2004) (per curiam) (unpublished) (noting that "police may circle to the back of the home under appropriate circumstances").  The first such case from this Court that we are aware of is *United States v. Bradshaw*, 490 F.2d 1097 (4th Cir. 1974), where, consistent with the implied license, officers approached the front door first and knocked.  *Id.* at 1099.  Receiving no answer, and having reason to believe the homeowner was home, the officers moved away from the front door to try the back door.  *Id.*  This Court said it was not impermissible for the officers to try the back door after they first knocked on the front door and received no answer, though the officers nonetheless violated the Fourth Amendment.  *Id.* at 1100.[5]

---

[5] In the unpublished *Edens* case, the officer likewise knocked on the front door first: The officer approached the front door to speak to the homeowner, observed marijuana plants in plain view on the front porch, and knocked; receiving no answer, he knocked on the back door, and left.  112 F. App'x at 873.  The plaintiff advanced an exceedingly broad argument that he had eliminated any implied license permitting strangers to approach his home at all—including the front door—because the plaintiff had posted "No Trespassing" signs and fenced much of his property.  *Id.* at 875–76.  Qualified immunity applied because the law on the sealing of property from all encounters was not clearly established.  *Id.* at 876.

Decades later, this Court in *Alvarez* declined to adopt a rule requiring "under all circumstances" that officers first knock at the front door, because such an "inflexible approach" could not be squared with the Fourth Amendment's touchstone of "reasonableness." 147 F.3d at 358. In *Alvarez*, officers responding to a 911 call first proceeded to the home's front door, but then they were diverted to the back by a sign at the front of the house posted by the homeowner; the sign directed visitors to the backyard where (as the sign revealed) the homeowner was receiving visitors that day. *Id.* at 358–59. "In light of the sign," this Court reasoned, "it surely was reasonable for the officers to proceed there directly as part of their effort to speak with the party's host." *Id.* Thus, "[it] was not unreasonable . . . for officers responding to a 911 call to enter the [Alvarez's] backyard when the circumstances indicated they might find the homeowner there." *Id.* at 359.

*Alvarez* said that "this circuit [in *Bradshaw*] has permitted law enforcement officers to enter a person's backyard without a warrant when they have a legitimate law enforcement purpose for doing so," a purpose "'unconnected with a search of such premises.'" *Id.* (quoting *Bradshaw*, 490 F.2d at 1100). Moreover, for the proposition that the "Fourth Amendment does not invariably forbid an officer's warrantless entry into the area surrounding a residential dwelling even when the officer has not first knocked at the front door," *Alvarez* referenced cases from three circuits. *Id.* at 358. But in none of them did an officer bypass an accessible front

9

door and proceed directly to the curtilage behind a home without a reasonable basis

to believe that the homeowner received visitors there.  In the first case referenced

by *Alvarez*, the officers approached the front door of the log home and found it

"inaccessible" because it was five feet above ground level without any steps.

*United States v. Daoust*, 916 F.2d 757, 758 (1st Cir. 1990).  Because the front door

was inaccessible, the officers knocked on a cellar door and received no answer, and

then "went to the back 'looking for an accessible main floor entrance' not to see if

unlawful activity was taking place, but as part of their efforts to interview Daoust."

*Id*.  In the second case cited in *Alvarez*, the officer's approach to an apartment's

rear entrance was reasonable because the officer "reasonably believ[ed] it [was]

used as a principal entrance to the dwelling."  *United States v. Garcia*, 997 F.2d

1273, 1279–80 (9th Cir. 1993).  The third case involved officers who first knocked

on the front door and received no answer, despite seeing a light on inside the house

and hearing a dog barking out back.  *United States v. Anderson*, 552 F.2d 1296,

1298, 1300 (8th Cir. 1977).

In sum, the foregoing case law involved officers who, consistent with a

homeowner's implied consent to be contacted at home, knocked on what they

believed to be the front of the home, or were prevented from doing so because the

home lacked an accessible front door, or were about to knock on the front door but

were diverted by a posted sign indicating that visitors were being received in the

10

back.  The Coveys submit that it is not reasonable to view these cases as abandoning altogether the principle of the implied license, and as establishing that a visitor has a right to ignore an accessible front door and proceed directly anywhere in the curtilage where he believes he might find someone he wishes to talk to—including in places where the public would not be expected to appear. Such a rule would not be one marked by customary invitation.

But even under that expansive rule, there remains a factual issue whether the circumstances these officers confronted would have given them reason to believe that Mr. Covey was in the backyard before they entered.  *See* Opening Br. 30–34. The circumstances confronting the officers—including whether Mr. Covey was visible to them before they entered the yard—have not yet been established.  *Id.*

### B.    The Tax Assessor Is Not Entitled To Qualified Immunity.[6]

The Coveys allege that a government tax agent conducted an unconstitutional search when, without their knowledge or consent (and in defiance of West Virginia law circumscribing tax assessment on private land), the tax agent opened the front door to their home (leaving a pamphlet inside), and breached the curtilage behind their home where he proceeded to search.  J.A. 13 (¶ 7). Importantly, in support of the *pro se* complaint's allegation that the tax assessor

---

[6] In the district court, Defendant Crews did not brief any argument of the merits of the Fourth Amendment "search" claim against him—i.e., he did not argue that the Coveys fail to state a claim against him for an unlawful search.  D.E. 27, 28.

conducted a search in the back patio area where he discovered what he believed to be marijuana, *see id.*, the Coveys maintain that he made this discovery by investigating the contents of a small storage bin in the patio area. Opening Br. 8, 42. That is where the Coveys contend the marijuana was located while they were away at lunch—inside containers within the bin. *Id.*

Crews conducted an unlawful search when he breached the curtilage of the Coveys' secluded rural home to gather information about the home for a tax assessment. But even if Crews somehow was justified in entering the curtilage to inspect the home's features without the Coveys' knowledge or consent, qualified immunity nonetheless is unwarranted based on the further intrusion that occurred when he examined the contents of the bin in the patio area.

To begin with, it was clearly established that the Fourth Amendment protects against unreasonable searches and seizures by government actors generally, not just police officers. *See New Jersey v. T.L.O.*, 469 U.S. 325, 335 (1985). It was also "well settled that the Fourth Amendment's protection extends beyond the sphere of criminal investigations." *City of Ontario v. Quon*, 130 S. Ct. 2619, 2627 (2010); *see Michigan v. Tyler*, 436 U.S. 499, 506 (1978) (observing that "there is no diminution in a person's reasonable expectation of privacy nor in the protection of the Fourth Amendment simply because the official conducting the search wears the uniform of a firefighter rather than a policeman"); *Camara v.*

*Mun. Court of City & Cnty. of San Francisco*, 387 U.S. 523, 539 (1967) (holding that administrative searches by housing inspectors constituted significant intrusions on Fourth Amendment interests, and that such searches, when authorized and conducted without a warrant procedure, lacked traditional safeguards guaranteed by the Fourth Amendment).

Accordingly, insofar as Crews was in the curtilage behind the secluded rural home for a government tax inspection—to gather information about the home that the government could then use to assess a tax on the home—the Fourth Amendment clearly was implicated. That the Coveys had a reasonable expectation of privacy in their backyard was evident in clearly established law establishing that curtilage is constitutionally protected space precisely because it is an extension of the home in which privacy is implicated. *See*, *e.g.*, *California v. Ciraolo*, 476 U.S. 207, 212–13 (1986). That they reasonably expected privacy in these particular circumstances is borne out by West Virginia law circumscribing nonconsensual tax assessment: Tax assessors are "not to enter the grounds" when "the property is posted with 'No Trespassing' signs," W.V. Code R. § 189-2-3.5 (at J.A. 40), and on-site assessments are restricted in the absence of homeowner consent, *see* W.V. Code R. §§ 189-2-3.3, 189-2-3.4 (at J.A. 40). These restrictions show that society was willing to accept as reasonable the Coveys' expectation that a government tax official would not be traipsing through their curtilage without their knowledge.

These regulations also confirm that Crews's intrusion was unnecessary and unjustified, since the regulations show that a tax assessor could have fulfilled the assessment function without a nonconsensual investigation on private residential property. (And in the rare case in which an official cannot obtain the requisite consent but decides that an on-site inspection is necessary, an administrative warrant can be obtained. *See Camara*, 387 U.S. at 539–40.) Because the function of tax assessment could have been performed without a surprise invasion of the Coveys' curtilage, no meaningful government interest justified Crews's intrusion so as to elevate his conduct to the status of a reasonable search. It should have been apparent to a reasonable tax assessor that entering the curtilage of the Coveys' secluded rural home to gather information about the home, without their knowledge or consent, amounted to an unreasonable intrusion on the Coveys' constitutionally protected interests.

But, as noted, this case involves more than a physical intrusion into the curtilage for the purpose of gathering information about a home. It involves an independent invasion of privacy by intruding into personal "effects" within the curtilage. *See* U.S. Const. amend. IV (protecting "homes" and "effects" from unreasonable searches and seizures). As noted, the Coveys maintain: that the marijuana was inside containers in a small storage bin in the patio area; that Crews's discovery of marijuana required a close examination of the containers in

the bin to ascertain the contents; and that Crews presumably moved a container to inspect the contents and view the marijuana, even if he did not outright open a container.[7]  *See* Opening Br. 8, 42.  If Crews decided to examine the containers upon a suspicion that they might contain evidence of a crime—thus pivoting from an administrative inspection to a criminal investigation—a reasonable official would have known that he could not lawfully search for evidence of a crime in a home's curtilage without a warrant, consent, or exigent circumstances.  *See*, *e.g.*, *Oliver*, 466 U.S. at 180 ("[T]he curtilage . . . warrants the Fourth Amendment protections that attach to the home."); *Van Dyke*, 643 F.2d at 993 (noting that "absent exigent circumstances a warrantless search of one's home or its curtilage, when effected through trespass, violates the fourth amendment").[8]  But regardless of Crews's motivation, a reasonable official would have known, based on clearly established law, that a search may occur when "the objective effect of his actions" infringes a reasonable expectation of privacy.  *See Bond v. United States*, 529 U.S. 334, 338 n.2 (2000).

---

[7] The Coveys do not know if Crews actually opened a closed container in the small bin, though his opening of the front door of their home hardly inspires confidence.

[8] Moreover, qualified immunity would be a nonstarter for another reason: "[A]n official who performs an act clearly established to be beyond the scope of his discretionary authority is not entitled to claim qualified immunity under § 1983." *In re Allen*, 106 F.3d 582, 593 (4th Cir. 1997).  A West Virginia tax assessor has no discretionary authority to investigate a violation of narcotics laws.  Under West Virginia law, "[t]he county assessor, a constitutional officer, is charged with the responsibility of assessing properties in the county at their true and actual value." *In re Shonk Land Co.*, 204 S.E.2d 68, 70 (W. Va. 1974).

The Coveys had a reasonable expectation of privacy in the contents of containers inside a small bin in the back patio area of their secluded rural home. And so, *even if* Crews was lawfully in the curtilage for the purpose of inspecting the home's features for a residential tax assessment, a reasonable person in his position would have known he was conducting a search by moving (or opening) containers in the bin to get a closer look at their contents. *See*, *e.g.*, *Arizona v. Hicks*, 480 U.S. 321 (1987). In *Hicks*, officers were lawfully in Hicks's apartment because of exigent circumstances—to search for a shooter, possible victims, and weapons—but the case trained on whether an officer's conduct inside the apartment violated the Fourth Amendment. *Id.* at 323. Specifically, an officer saw stereo equipment and, suspecting it was stolen, moved some of the components to get a look at the serial numbers (which he reported to headquarters, which then used the numbers to determine that the equipment was stolen). *Id.*

Writing for the Court, Justice Scalia explained that this "moving of the equipment [to reveal the serial numbers] . . . constitut[ed] a 'search' separate and apart from the search for the shooter, victims, and weapons that was the lawful objective of his entry into the apartment." *Id.* at 324–25. "*[T]aking action, unrelated to the objectives of the authorized intrusion, which exposed to view concealed portions of the apartment or its contents, did produce a new invasion of [Hicks's] privacy* unjustified by the exigent circumstances that validated the

16

entry." *Id.* at 325 (emphasis added). The Court further observed that "the distinction between looking at a suspicious object in plain view and moving it even a few inches is much more than trivial for purposes of the Fourth Amendment." *Id.* (internal quotation marks and citations omitted); *see also id.* ("A search is a search, even if it happens to disclose nothing but the bottom of a turntable."). Because the officer lacked probable cause to believe that the stereo equipment was evidence of a crime when he moved it to inspect the serial numbers, his search was unconstitutional. *Id.* at 326. As *Hicks* shows, insofar as Crews moved containers in the Coveys' bin to disclose contents that otherwise were not in plain view, he conducted a search of personal effects. And this is true even if Crews had lawfully entered the curtilage, because his justification for entering—to gather information about the home's features for purposes of assessing a tax on the home—could not justify his further intrusion of examining personal effects in the patio area.

Similar reasoning led this Court to hold that a Forest Service employee's observation of marijuana among personal effects was unlawful because it exceeded his initial justification for entering the place in which the personal effects were located. *United States v. Moss*, 963 F.2d 673 (4th Cir. 1992). In *Moss*, two college students rented a cabin through the Forest Service. *Id.* at 674. While they were away from the cabin, a Forest Service officer entered the cabin under allegedly exigent circumstances: He had been told that nobody was renting the cabin and so

17

he feared it had been illegally broken into; and he was trying to determine if the owners of a nearby illegally parked car were lost or injured. *Id.* at 675–77. Once inside, he "saw a backpack, with an open pocket and with a driver's license in 'plain view.'" *Id.* at 675. "He then picked up the driver's license and, according to the officer, at that point he noticed a small bag of marijuana 'in plain view' beneath it." *Id.* As a result, a student was charged with possessing the marijuana. This Court reasoned that even if the Forest Service officer's original entry into the cabin was justified by an emergency, his ensuing examination of "the occupants' personal effects"—e.g., moving the driver's license, thereby disclosing the marijuana—violated the Fourth Amendment because it exceeded his lawful purpose for being there (verifying if a break-in had occurred, or rendering any needed assistance). *Id.* at 679–80. "In this further foray, on any reasonable view of the matter, [he] was simply rummaging at will through the occupants' personal effects." *Id.* at 680. A justified warrantless entry into a protected area, the Court held, "cannot be used as the occasion for a general voyage of discovery unrelated to the purpose of the entry." *Id.* at 678. The same goes for Crews.

Similarly, this Court held that an officer violated the Fourth Amendment when, in the backyard of a home, he peered inside an object to see contents not otherwise in plain view. *Bradshaw*, 490 F.2d at 1099–1101. In *Bradshaw*, officers went to the defendant's home to ask him questions. *Id.* at 1099. After knocking on

18

the front door and receiving no answer, an officer decided to try the back door. *Id.* On his way there, he smelled the odor of whiskey emanating from a truck in the backyard (he had been investigating an illegal moonshine operation). *Id.* Because he could not be certain that whiskey was in the truck, he decided that "further visual observation was necessary to confirm the hypothesis," *id.* at 1101, and so he looked through a "crack" between the truck's back doors, at which point he saw incriminating evidence of a moonshine operation, *id.* at 1099–1100. Because "[t]he truck was parked on defendant's property very near to his residence," the defendant "had a reasonable expectation that the contents of his truck would remain unknown to the general public"; thus, when the officer "looked through the crack between the closed rear doors of the truck, he 'searched' the truck within the meaning of the fourth amendment." *Id.* at 1101. The Court held "that where, in the course of an initially justifiable intrusion, an officer discovers facts which give him reason to believe that evidence of crime will be found by a further intrusion beyond the scope of the original intrusion," the official must have an "independent justification for such further intrusion." *Id.*

In sum, the Coveys maintain that Crews conducted an unlawful search when, without their knowledge or consent, he breached the curtilage of their secluded rural home to gather information about the home for the purpose of assessing property taxes. But even if, despite all we have argued to the contrary, Crews was

19

justified in entering the curtilage to inspect the home's features without the

Coveys' knowledge or consent, qualified immunity nonetheless is unwarranted

based on the further intrusion that occurred when he examined the contents of the

bin in the patio area. It should have been apparent to a reasonable official that he

was exceeding the purpose of his original intrusion and conducting an unlawful

search when he decided to inspect personal effects in the curtilage of the home.

Finally, Crews's opening of the front door of the Coveys' home without

their knowledge or consent violated clearly established law. It was clearly

established that privacy interests "cannot turn upon the presence or absence of a

physical intrusion into any given enclosure," *Katz v. United States*, 389 U.S. 347,

353 (1967), and that the Fourth Amendment refuses to permit "actual intrusion into

a constitutionally protected area"—like the home—"by even a fraction of an inch,"

*Silverman v. United States*, 365 U.S. 505, 512 (1961). In no setting "is the zone of

privacy more clearly defined than when bounded by the unambiguous physical

dimensions of an individual's home . . . ." *Payton v. New York*, 445 U.S. 573, 589

(1980). As the Supreme Court said in holding that an unlawful warrantless

"search" of a home occurred by monitoring a radio transmitter: "At the risk of

belaboring the obvious, private residences are places in which the individual

normally expects privacy free of governmental intrusion not authorized by a

warrant, and that expectation is plainly one that society is prepared to recognize as justifiable." *United States v. Karo*, 468 U.S. 705, 714 (1984).

Thus, the Supreme Court admonished more than a decade ago that "there is certainly no exception to the warrant requirement for the officer who barely cracks open the front door and sees nothing but the nonintimate rug on the vestibule floor. In the home, . . . *all* details are intimate details, because the entire area is held safe from prying government eyes." *Kyllo v. United States*, 533 U.S. 27, 37 (2001). Which is why a search occurs when an officer demands that an occupant open a home's door and then looks inside the open doorway. *E.g.*, *United States v. Winsor*, 846 F.2d 1569, 1572 (9th Cir. 1988) (en banc).

Because the Coveys were not home, at this stage they cannot know the scope of Crews's intrusion. Crews could have stood at the threshold and allowed his eyes to linger and surveil the Coveys' "effects." Perhaps he stepped one foot inside. *See Dalcour v. City of Lakewood*, 492 F. App'x 924, 932–34 (10th Cir. 2012) (unpublished) (denying qualified immunity to officer who in 2006 put her foot in the doorway of plaintiff's home: "Physical entry of the home, even if only with one foot on the threshold, is an entry of the home for constitutional purposes."). Perhaps Crews went further inside. In any case, under clearly established law, a reasonable government official would have known he could not lawfully open the front door of a home and look inside.

21

## CONCLUSION

Defendants are not entitled to a dismissal on the basis of qualified immunity.

April 3, 2014                                   Respectfully submitted,

                                               /s/ Sean E. Andrussier

                                               Sean E. Andrussier
                                               DUKE UNIVERSITY SCHOOL OF LAW
                                               Box 90360
                                               210 Science Drive
                                               Durham, North Carolina 27708
                                               (919) 613-7280
                                               *Appointed Counsel for Appellants*

On the brief:

Shifali Baliga
Nicholas S. Brod
Erika M. Hyde

*Students, Duke University School of Law*

## WORD COUNT AND CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE REQUIREMENT

Pursuant to Fed. R. Ap. P. 32(A)(7):

I certify that this brief contains 5,629 words.

I certify that this brief complies with the typeface requirements of Fed. R.

App. P. 32(a)(5)(A), because it has been prepared in a proportionally spaced,

typeface, 14-point Times New Roman, using Microsoft Word.

/s/ Sean E. Andrussier
Sean E. Andrussier
Attorney for Appellants
Dated: April 3, 2014

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 3rd day of April, 2014, I caused this

Supplemental Brief of Appellants to be filed electronically with the Clerk of the

Court using the CM/ECF System, which will send notice of such filing to the

following registered CM/ECF users, who are counsel for all the Appellees:

**Thomas E. Buck, Esq.**
**Bruce M. Clark, Jr., Esq.**
Bailey & Wyant, PLLC
1219 Chapline St.
Wheeling, WV 26003
Email: tbuck@baileywyant.com
Email: bclark@baileywyant.com

**Betsy Steinfeld Jividen, Esq.**
U.S. Attorney's Office
PO Box 591
Wheeling, WV 26003
Email: betsy.jividen@usdoj.gov

**Edward Himmelfarb**
U.S. Department of Justice
950 Pennsylvania Avenue, NW, Room 7646
Washington, D.C. 20530
Email: edward.himmelfarb@usdoj.gov

**Lee Murray Hall, Esq.**
**Sarah A. Walling, Esq.**
Jenkins Fenstermaker, PLLC
PO Box 2688
Huntington, WV 25726-2688
Email: lmh@jenkinsfenstermaker.com
Email: saw@jenkinsfenstermaker.com

I further certify that on this 3rd day of April, 2014, I caused the required copies of the Supplemental Brief of Appellants to be hand filed with the Clerk of the Court.

/s/ Sean E. Andrussier
Attorney for Appellants
April 3, 2014